IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION


**KARMA RAE K.,** [1]

        Plaintiff,                        Civ. No. 2:18-cv-01338-CL

    v.                               **OPINION AND ORDER**

**COMMISSIONER OF SOCIAL SECURITY,**

        Defendant.

_____

MARK D. CLARKE, Magistrate Judge.

      Plaintiff Karma Rae K. ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration denying her claim for supplemental security

income under Title XVI of the Social Security Act.  For the reasons provided below, the

Commissioner's decision is AFFIRMED.[2]

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.
[2] The parties have consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c)(1).

## BACKGROUND

Plaintiff was born in 1974 and was 39 years old at the time she filed her application for supplemental security income ("SSI"). Tr. 290. Plaintiff was homeless at the time she filed her application and the record indicates that she remained homeless throughout the disability application process. *Id.* Plaintiff has completed at least some high school, and there is contradictory evidence in the record making it unclear as to whether she obtained her GED. Tr. 329, 620. Plaintiff has no past relevant work experience. Tr. 24. Plaintiff has alleged a history of trauma, including physical and sexual abuse (Tr. 519), as well as a history of substance use (Tr. 459, 516, 521, 622).

Plaintiff filed an application for supplemental security income on March 15, 2014, alleging disability beginning January 1, 2009, due to mental impairments. Tr. 17, 290, 324. Plaintiff's claim was denied initially and upon reconsideration. Tr. 163, 170. A hearing was held on March 31, 2017, before Administrative Law Judge ("ALJ") Mark Kim. Tr. 15. In addition to Plaintiff, both an impartial medical expert and an impartial vocational expert appeared and testified at the hearing. *Id.* On April 28, 2017, the ALJ issued an unfavorable decision. Tr. 12-25. On May 15, 2018, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. Plaintiff now appeals that final decision.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially

dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks

the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R.

§§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the five-step analysis, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since March 12, 2014, the application date. Tr. 17.

2. Plaintiff has the following severe impairments: posttraumatic stress disorder; bipolar disorder; and personality disorder. Tr. 17.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20.

4. Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: She is limited to simple, routine tasks with no high-speed production requirements, such as conveyor belt-type work. She is limited to occasional and superficial interaction with the public and coworkers. Tr. 21.

5. Plaintiff has no past relevant work. Tr. 24.

6. Transferability of job skills is not an issue because Plaintiff does not have past relevant work. Tr. 24.

7. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 24.

Consequently, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, since March 12, 2014, the date the application was filed. Tr. 25.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations

of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

The only issue for review in this case is whether the ALJ erred in evaluating the medical opinion evidence. The ALJ must consider all medical opinion evidence. 20 C.F.R. § 404.1527(b). When "the record contains conflicting medical evidence, the ALJ is charged with

determining credibility and resolving the conflict. . . ." *Chaudhry v. Astrue*, 688 F.3d 661 (9th Cir. 2012) (citation omitted). In social security cases, there are three categories of medical opinions: those that come from treating, examining, and non-examining doctors. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2008). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202. An ALJ may properly reject a treating or examining physician's uncontradicted medical opinion only for "clear and convincing reasons." *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995). When a treating or examining physician's opinion has been contradicted, the opinion may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). This can be done by setting out a detailed and thorough summary of the facts, providing an appropriate interpretation thereof, and making findings. *See Megallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

In this case, Plaintiff argues that the ALJ erred in giving little weight to Dr. Arnold's opinion and great weight to Dr. Greenfield's opinion. Both doctors are examining physicians that produced medical opinions based on their one-time psychological examination of Plaintiff. The Court concludes that the ALJ reasonably weighed these two medical opinions and his findings are supported by substantial evidence in the record.

At the request of the Washington State Department of Human Services ("DHS"), Plaintiff underwent a psychological evaluation with Dr. Arnold in January 2014. Tr. 18, 405-08. Dr.

Arnold opined that Plaintiff had numerous marked and severe limitations in the ability to perform basic work activity, and diagnosed Plaintiff with schizophrenia, paranoid type; personality disorder not otherwise specified with antisocial features; and mild mental retardation by history with formal testing. Tr. 18, 23, 405-08. During the evaluation, Plaintiff denied substance use. *Id.* Plaintiff reported to Dr. Arnold significant hallucinations on a daily basis, but her mental status exam was largely within normal limits. Tr. 405-08. Dr. Arnold also noted that Plaintiff's Rey[3] test was indicative of "questionable effort/MMR [mild mental retardation]." Tr. 18, 406.

Approximately two and a half years later, in July 2016, Plaintiff underwent a second DHS psychological evaluation, this time with Dr. Greenfield. Tr. 18, 619-23. Dr. Greenfield diagnosed Plaintiff with unspecified substance-related disorder and malingering. Tr. 621. Similar to Dr. Arnold's note that Plaintiff put forth questionable effort during her Rey testing, Dr. Greenfield noted that Plaintiff's performance during the Rey testing suggested "inadequate effort" and "was highly indicative of malingering." Tr. 621. Dr. Greenfield stated that a finding of malingering was also supported by Plaintiff's "ability to recall her quarterly payment of $190 from the Umatilla Tribe, client's claim that she can tend to all of her own ADLs [activities of daily living], and her observed ability to complete the BDI and BAI with complicated instructions." Tr. 622. Dr. Greenfield marked "severity indeterminate" for all of the listed basic work activities on the evaluation sheet, and further noted that he was "not able to differentiate reported symptoms from malingering." Tr. 621-22. Dr. Greenfield also noted inconsistencies in Plaintiff's reports related to drug use. Tr. 622.

---

[3] Although neither Dr. Arnold nor the ALJ defined "Rey," it appears they are both referring to the Rey–Osterrieth complex figure test, which is a neuropsychological assessment in which examinees are asked to reproduce a complicated line drawing, first by copying it freehand (recognition), and then drawing from memory (recall). https://en.wikipedia.org/wiki/Rey%E2%80%93Osterrieth_complex_figure

Considering Dr. Greenfield's medical opinion and other medical opinion evidence in the record, the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence to discount Dr. Arnold's medical opinion. First, the ALJ noted that Dr. Arnold's opined limitations and diagnoses had been discounted very early in the record. Tr. 23. For example, Plaintiff's treating physician, Dr. Jones, diagnosed Plaintiff with bipolar 1 disorder and PTSD, but ruled out schizoaffective disorder bipolar type. Tr. 18, 526. Additionally, Dr. Lace, a medical expert in clinical psychology, testified that there were difficulties early on in the record differentiating between substance use disorders versus actual psychotic features. Tr. 19. The ALJ further noted that despite Dr. Arnold reporting that Plaintiff experienced significant hallucinations on a daily basis, her mental status exam was largely within normal limits. Tr. 23-24. Regarding Dr. Arnold's opined diagnosis of mild mental retardation by history with formal testing, the ALJ noted that earlier record documents (exhibits B5A; B3F; B17F/1; B20F/47) revealed that Plaintiff's formally tested IQ score was not representative of her actual level of intellectual functioning. Tr. 17. The evidence cited by the ALJ support this finding.

Moreover, the ALJ pointed out that Dr. Arnold's note of Plaintiff's questionable effort was consistent with Dr. Greenfield's finding of malingering and noted that evidence of malingering was "rather common in this record." Tr. 24. For example, one mental health counselor that completed objective testing found that Plaintiff's "decidedly obvious exaggeration of her symptoms nullifies the likelihood of an accurate diagnosis for a mood disorder being made beyond the similar diagnoses given in 1998 of Polysubstance Dependence and Psychosis NOS; likely the result of substance abuse/withdrawal." Tr. 565. Another examining psychologist found Plaintiff's elevated test scores suggested that she was "over-reporting" her symptoms. Tr. 571. Plaintiff's exaggeration of symptoms and malingering on testing undermine Dr. Arnold's

conclusions. The ALJ did not err in discounting Dr. Arnold's one-time report for these reasons. The ALJ also did not err in giving greater weight to Dr. Greenfield's opinion because there is no legal error when an ALJ does not reject evidence and instead reasonably interprets it as supporting a finding of non-disability. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Dr. Greenfield's observation that Plaintiff put forth inadequate effort indicative of malingering was consistent with other medical evidence in the record. It was reasonable for the ALJ to consider this evidence in making his disability determination.

## ORDER

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

DATED this ___ day of February, 2020.

MARK D. CLARKE
United States Magistrate Judge